IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| JAMES D. SPEARS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08-3393-CV-S-GAF-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### ORDER

Plaintiff filed two applications under the Social Security Act ("the Act"). The first was an application for disability benefits under Title II of the Act, 42 U.S.C. §§ 401, *et seq*. The second was an application for supplemental security income ("SSI") benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq*. Both applications were denied initially. On July 24, 2008, following a hearing, an administrative law judge ("ALJ") rendered a decision in which she found that Plaintiff was not under a "disability" as defined in the Social Security Act. On September 18, 2008, the Appeals Council of the Social Security Administration denied Plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review herein.

The standard of appellate review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support the Commissioner's conclusion. *See Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008). Evidence that both supports and detracts from the Commissioner's decision should be considered, and an

administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *See Finch*, 547 F.3d at 935 (citing *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004)). A court should disturb the ALJ's decision only if it falls outside the available "zone of choice" and a decision is not outside that zone of choice simply because the court may have reached a different conclusion had the court been the fact finder in the first instance. *See Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citations omitted). The Eighth Circuit has further noted that a court should "defer heavily to the findings and conclusions of the SSA." *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

To establish entitlement to benefits, Plaintiff must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d) and § 1382c(a)(3)(A).

Upon consideration of the record, the ALJ found that Plaintiff had post-traumatic stress disorder with psychotic features; panic disorder, history of alcohol abuse; anxiety disorder; history of personality disorder, not otherwise specified; chronic pain syndrome (neuropathic pain); and left ulnar neuropathy, but did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. § 404, Subpart P, Appendix 1, Regulations No. 4. The ALJ found that while Plaintiff's impairments would preclude him from performing his past work, they would not preclude him from performing work existing in significant numbers in the national economy. Consequently, the ALJ found Plaintiff was not disabled.

Plaintiff argues on appeal that the ALJ did not properly consider all the credible evidence of record, including the medical opinion evidence, in determining Plaintiff's residual functional capacity ("RFC"). In this regard, the record reflects that Plaintiff began treating with Dr. Linda Lewis, Psy.D., for his mental illnesses in October 2007. In total, Dr. Lewis treated Plaintiff five times from October 3, 2007 to January 17, 2008. Dr. Lewis initially assessed Plaintiff's GAF score as 60[1] and diagnosed Plaintiff with panic disorder, anxiety disorder, and PTSD with psychotic features. Dr. Lewis indicated that Plaintiff was markedly limited in ten areas of functioning, moderately limited in the other ten area, and would miss more than four days per month due to his mental impairments.

Treating doctors' opinions should not ordinarily be disregarded and are normally entitled to great weight. *See Cunningham v. Apfel*, 222 F.3d 496, 502 (8th Cir. 2000); *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000). It is only appropriate to disregard or discount a treating physician's opinion when that physician renders inconsistent opinions that undermine the credibility of such opinions or when other medical assessments are supported by better or more thorough medical evidence. *See Prosch*, 201 F.3d at 1013.

Dr. Lewis was the only treating psychiatric professional to evaluate Plaintiff. Moreover, Dr. Lewis' credibility was not undermined by inconsistent medical opinions.

The ALJ raises the fact that Dr. Lewis indicated that Plaintiff was "cheerful and stable" as contradicting her later opinion. However, for persons with psychotic illnesses, indications in the medical record that a claimant is "doing well for the purposes of a treatment program has no

---

[1] Persons with GAF scores of 51-60 exhibit moderate symptoms or moderate impairment in social, occupational, or school functioning. DSM IV-TR.

necessary relation to a claimant's ability to work or to her work-related functional capacity." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001). In this regard, "individuals with chronic psychotic disorders commonly have their lives structured in such a way as to minimize stress and reduce their signs and symptoms." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E) (1999). The reference to "cheerful and stable" does not present substantial evidence to support the ALJ's decision.

The only other psychiatric expert to examine Plaintiff was Dr. David Lutz, Ph.D., on March 9, 2006. Dr. Lutz determined that Plaintiff's GAF was 55, but suggested that he could have serious symptoms if the self-report was inaccurate. At that time, Plaintiff was taking two prescribed medications for his psychiatric disorders, Xanax (*i.e.*, alprazolam) and Paxil (*i.e.*, paroxetine). There is evidence that, after this opinion was issued, Plaintiff's reported activities subsequently became more limited, he developed additional diagnoses and increased symptoms, and that his prescription medications had to be adjusted.

Plaintiff reported to Dr. Lutz in March 2006 that he was able to accompany his girlfriend shopping and share household chores and meal preparation duties with her. By April 2008, his girlfriend indicated that Plaintiff is now unable to handle routine daily activities such as household chores and shopping due to his physical difficulties and mental illnesses. Plaintiff himself reported in a March 2008 questionnaire that he was unable to perform household chores other than preparing simple meals and avoided shopping due to memory problems and panic attacks.

Dr. Lutz diagnosed Plaintiff in March 2006 with depressive and personality disorders. By July 2006, Plaintiff was being treated for anxiety disorder as well. In November 2006,

4

Plaintiff complained of increased panic attacks and requested a referral to psychiatry. Physicians at the Family Medical Care Center noted that Plaintiff's depression and anxiety deteriorated in July 2007, and that his anxiety worsened the following month. Dr. Lewis added a third diagnosis, PTSD with psychotic features, in October 2007.

After being evaluated by Dr. Lutz, Plaintiff was prescribed at least six additional psychiatric medications: Cymbalta, Diazopam, Wellbutrin (*i.e.*, Bupropion), Celexa, Abilify, and Klonopin (*i.e.,* Clonzaepam). Dr. Lewis prescribed the latter three medications, only one of which were apparently effective, at Plaintiff's last visit on January 17, 2008.

Dr. Lutz's opinion was that Plaintiff was able to understand and remember simple and moderately complex instructions, sustain concentration and persistence on simple and moderately complex tasks, and interact in most social situations. However, the opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence by itself. *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). Dr. Lutz examined Plaintiff and his opinion was issued in March 2006, before many significant developments as reflected in the record. Moreover, Dr. Lutz's opinion was given approximately two years before the first hearing.

Additionally, the ALJ committed error by failing to explicitly weigh the psychological opinion of the state psychologist, Dr. Kenneth Burstin. ALJs must explain the weight given to the opinions of state medical consultants in the decision unless a treating source's opinion is given controlling weight. *See* 20 C.F.R. § 404.1527(f). In the decision, the ALJ acknowledges this burden, which is also imposed by SSR 96-6p, but fails to state the weight granted to Dr. Burstin's opinion. Although it is within the ALJ's authority to resolve conflicting opinions,

5

*Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989), courts must be able to determine whether they considered conflicting reports under the correct legal standard. *Ingram v. Chater*, 107 F.3d 598, 605 (8th Cir. 1997).

The ALJ's decision is not supported by substantial evidence.

WHEREFORE, for the reasons stated herein, the Commissioner's decision is reversed and this matter is remanded to the Commissioner for an award of benefits.

s/ Gary A. Fenner
Gary A. Fenner, Judge
United States District Court

DATED: August 13, 2009